# COURT OF APPEALS OF TEXAS.

## GALVESTON TERM, 1880.

### D. H. FRANCIS v. THE STATE.

1. LAND FORGERY. — *Ham v. The State*, 4 Texas Ct. App. 645, approved in so far as it maintains the constitutionality of sect. 5 of the act of 1876 "to provide for the detection and conviction of all forgers of land-titles;" which section makes extra-territorial offenders amenable for violations of the act, and provides that indictments therefor may be presented "by the grand jury of Travis County, or in the county where the offence was committed, or in the county where the land lies about which the offences in this act were committed." *Held further*, that the provisions of this section are embraced in the title of said act.

2. SAME. — A citizen of R. County, in this State, was indicted in Travis County for a land-title forgery committed in R. County after the passage of the act of 1876 "to provide for the detection and conviction of all forgers of land-titles." *Held*, that, notwithstanding the laws which in general control the venue of criminal trials, the said act empowers the grand jury of Travis County to indict and the District Court of said county to try the defendant for the alleged forgery committed in R. County. It is immaterial where the offence was committed, provided it affected land in this State.

3. EVIDENCE. — The general rule requires that the evidence correspond with the allegations and be confined to the point in issue; but this does not exclude evidence which tends to prove the issue or constitutes a link in the chain of proof, though not of itself sufficient.

4. SAME. — When proof of guilty knowledge or intent is necessary, such facts may be shown as tend to establish such knowledge or intent, notwithstanding they are merely collateral or may themselves constitute a distinct offence. Therefore in a trial for forgery of a transfer from S. to B. it was competent for the State to introduce the conveyance to S. from one T., and prove that it and the certificate of acknowledgment thereto were forgeries.

5. SAME — CHARGE OF THE COURT. — But when evidence of collateral facts or of a distinct offence is admitted as proof of the guilty knowledge or intent of the accused, the charge of the court should apprise the jury of the legitimate scope and purpose of such evidence, and thus guard them against treating it as proof of the *corpus delicti*.

501

6. Same.— A charge to the jury, though composed of excerpts from the Codes, is defective and erroneous in a trial for felony if it gives no instructions which may enable the jury to apply the law to the facts in proof and to the issue of guilty or not guilty.

Appeal from the District Court of Travis. Tried below before the Hon. E. B. Turner.

The indictment charged the appellant with the forgery of a transfer from William Smith to R. W. Bell of a land-certificate issued to one John Todd. The offence was alleged to have been committed in Robertson County, on April 20, 1877. In a second count, which was abandoned by the prosecution, the appellant was charged with uttering and passing as true the said forged transfer. The material allegations of the count on which the trial was had appear in the opinion. The jury found the defendant guilty, and assessed his punishment at five years in the penitentiary.

The forged instrument was as follows : —

" The State of Texas, ⎰
    *County of Robertson.* ⎱

    " Know all men by these presents that I, William Smith, of the city of New Orleans, Louisiana, for and in consideration of the sum of one hundred and thirty dollars to me in hand paid by R. W. Bell of Robertson County, Texas, the receipt of which is hereby acknowledged, do by these presents grant, bargain, sell, and convey unto the said R. W. Bell, his heirs and assigns, all my right, title, and interest in the certain bounty-warrant of the State of Texas number fifty-five, for six hundred and forty acres of land in said State, issued to John Todd the sixth day of October, A. D. 1859, by said State, — to have and to hold unto the said R. W. Bell, his heirs and assigns forever, in fee-simple. And I, the said William Smith, will, and my heirs, executors, and administrators shall, the right and title of said warrant and land to the said R. W. Bell, his heirs and assigns forever, warrant and defend against the claims of

ourselves, or the lawful claim of any person or persons whatsoever. Witness my hand this twentieth day of April, A. D. 1877.                      WILLIAM SMITH.''

The evidence is quite elaborate, and in a great degree circumstantial. Its sufficiency not being involved in the rulings made, there is no occasion for a detail of it, as the opinion indicates the facts with which it deals.

*John B. Rector* and *E. C. Saltmarsh*, for the appellant. The court erred in overruling the exception to the indictment, that the statute under which it was found, and particularly sect. 5 thereof, was unconstitutional and void.

The proper county for the prosecution of offences is that in which the offence is committed. Pasc. Dig., art. 2676.

'' No citizen of this State shall be deprived of life, liberty, property, privileges, or immunities, or in any manner disfranchised, except by the due course of the law of the land.'' Const. 1876, sect. 19, Bill of Rights.

'' Nor shall any State deprive any person of life, liberty, or property, without due process of law.'' Const. U. S., art. 14, subdiv. 1.

The indictment alleged the offence to have been committed in Robertson County, and hence the application of these constitutional provisions was raised by the exceptions referred to. '' The right of trial by jury shall remain inviolate.'' Const. 1876, sect. 15, Bill of Rights.

What sort of a jury is guaranteed beyond the reach of the Legislature? We answer, a jury as known to the common law, — a jury of the vicinage *parium suorum*. Unquestionably the Legislature cannot depute to German citizens of Texas the exclusive right to try American-born citizens of the State ; nor could they reverse the proposition. Can the Legislature, as this law of 1876 attempts to do, force a citizen, for example, of Sabine County, who is charged with a forgery in the county of his residence, to the capital at Austin for trial among strangers? '' Any less

than this number of twelve would not be a common-law jury, and not such a jury as the Constitution guarantees to accused parties." Cooley's Const. Lim. (2d ed.) 318. "Many of the incidents of a common-law trial by jury are essential elements of the right. The jury must be indifferent between the prisoner and the Commonwealth. The jury must also be summoned from the vicinage where the crime is supposed to have been committed; and the accused will thus have the benefit, on his trial, of his own good character and standing with his neighbors, if these he has preserved; and also of such knowledge as the jury may possess of the witnesses who may give evidence against him. He will also be able with more certainty to secure the attendance of his own witnesses." Cooley's Const. Lim. (2d ed.), tit. "Trial by Jury," marg. pp. 319, 320. See Sedgw. on Stat. & Const. Law, 542; 2 Kent's Comm. 5, 6, 13 (12th ed.). "The words 'by the law of the land,' as used in the Constitution, do not mean a statute passed for the purpose of working the wrong. The people would be made to say to the two houses, you shall be vested with the legislative power of the State, but not one shall be disfranchised, or deprived of any of the rights or privileges of a citizen, unless you pass a statute for that purpose. In other words, you shall not do wrong unless you choose to do so." Cooley's Const. Lim. (2d ed.) 354, marg. notes 1, 2; Sedgw. on Stat. & Const. Law, 534–546, and note on p. 539; *Pennoyer* v. *Neff*, 5 Otto, 714; 2 Kent's Comm. (12th ed.) 5, 6, 13; *Taylor* v. *Porter*, 4 Hill, 144; *Jones* v. *Perry*, 10 Yerg. 59; *Ervine's Appeal*, 16 Pa. St. 256; *The State* v. *Doherty*, 60 Me. 509. "On the other hand, we shall find that general rules may sometimes be as obnoxious as special, if they operate to deprive individual citizens of vested rights. * * * The whole community is entitled at all times to demand the protection of the ancient principles which shield private rights against arbitrary interference, even though such interfer-

ence may be under a rule impartial in its operation.  It is not the partial nature of the rule so much as its arbitrary and unusual character which condemns it as unknown to the law of the land."  Cooley's Const. Lim. (2d ed.), marg. p. 355.  "The principles, then, upon which the process is based are to determine whether it is due process or not, and not any consideration of mere form."  Cooley's Const. Lim. (2d ed.), marg. p. 356.  "Administrative and remedial process may change from time to time, but only with due regard to the landmarks established for the protection of the citizens.  When the government, through its established agencies, interferes with the title to one's property or with the independent enjoyment of it, and its action is called in question as not in accordance with the law of the land, we are to test its validity by those known principles of civil liberty and constitutional protection which have become established in our system of laws, and not generally by rules that pertain to forms of procedure merely."  Cooley's Const. Lim. 356.  "Special courts cannot be created for the trial of the rights and obligations of particular parties.  *  *  *  The doubt might arise also whether a regulation made for one class of citizens, entirely arbitrary in its character and restricting their rights, privileges, or legal capacities in a manner before unknown to the law, could be sustained notwithstanding its generality."  Cooley's Const. Lim. (2d ed.) 393.  "While the right to a particular remedy is not a vested right, and while as a general rule every State has complete control over the remedies it affords to suitors in its courts, this, of course, must be understood with due regard to the organic law."  March v. The State, 44 Texas, 81.

The calm judgment of mankind has kept these doctrines, to wit, a trial "by a jury of the vicinage," and by "due course of the law of the land," among its jewels.  "In times of excitement they have been beaten down, but with the return of reason comes the public voice," and demands and reasserts them more firmly than before.

The court erred in the charge to the jury wherein it is said, "It shall only be necessary to prove that defendant took any one step or did any one act or thing in the commission of the offence, if from any such step, act, or thing any intention to defraud may reasonably be inferred." This charge was a literal copy of sect. 3 of the law of July 28, 1876. There are three requisites to the conviction of a citizen of this State for crime : *first*, the offence must be defined (Pasc. Dig., art. 1605) ; *second*, it must be charged in an indictment, in which the nine requisites thereof are stated (Pasc. Dig., art. 2863) ; *third*, the offence as charged must be proven by witnesses. In the case of *Hewett* v. *The State*, 25 Texas, 724, the statute under which defendant was indicted provided "that if any person or firm shall sell, or be in any wise concerned in selling, spirituous, vinous, or other intoxicating liquors in quantities less than one quart, without having first obtained a license therefor in the manner prescribed by this act, he, she, or they shall be deemed guilty of a misdemeanor ; that in all prosecutions for any violations of any of the provisions of this act it shall be sufficient to allege and prove that the person charged with any such violation did sell, or was concerned in selling, spirituous, vinous, or intoxicating liquors ; and it shall not be necessary to allege or prove that the same was sold without license."

Roberts, J., in delivering the opinion of the court, says : "We do not think that the Legislature can condemn a particular act as an indictable offence, and then empower the courts, in the prosecution of a party for the commission of that act thus condemned, to substitute in the indictment and proof of it a different act which is not the same, and is not itself prohibited by law."

The court quote our Bill of Rights, that "no citizen shall be deprived of life, liberty, etc., except by due course of the law of the land." *Hewett* v. *The State*, 25 Texas, 726 ; *The People* v. *Toynbee*, 2 Park. Cr. 329 ; *Wynhamer* v. *The People*, 2 Park. Cr. 421 ; *The People* v. *Toynbee*, 2 Park. Cr. 491 ; *The State* v. *Slater*, 6 Coldw. 252.

Sect. 3 of the act of July 28, 1876, was literally charged by the court.   The Legislature in this section says that a man may be convicted of land-forging though his crime was not fully proven according to the rules of the "law of the land."   If the Legislature has power to say that half proof, or any amount short of full proof, according to our rules of criminal procedure, shall convict the accused, then they may convict him without proof.   Suppose the indicted person pulled off his coat, dipped his pen in the ink, and said to his accomplice, in the hearing of a witness, that he was going to write a forged transfer to A. B.'s head-right in Travis County, — is that forgery?   And yet the accused took a step and did several acts and things in the commission of the offence from which might be inferred the fraudulent intentions referred to in the statute.   Suppose the accused person went further, and commenced to write the forged transfer, — could that be forgery?   Not so if a forgery is a " false instrument in writing purporting to be the act of another."   Pasc. Dig., art. 2093.   Now if we suppose (which is not improbable) that the Legislature intended that the State should first fully prove by competent evidence that the forgery charged had been committed, and then that the defendant might be convicted if it was shown that he took any one step or did any one act or thing in the commission of the offence if from such act or thing any of the fraudulent intentions referred to in the statute could be inferred, still the law is unconstitutional, for it authorizes the jury to convict without full proof.   It authorizes them to infer that the accused perpetrated one or more of the constituent elements of the offence without that fact being proven.   The mind with thought might imagine fifty different acts or things in the commission of forgery from one or more of which the intent to defraud might reasonably be inferred, but not so safely inferred as where all the facts constituting forgery are proven.   This statute cuts off all reasonable doubt from the prisoner, and

is calculated to put him on proof that he did not commit the offence.

*Thomas Ball*, Assistant Attorney-General, for the State.

Winkler, J.   The appellant was prosecuted in the District Court of Travis County under the act of July 28, 1876, entitled "An act to provide for the detection and conviction of all forgers of land-titles," on an indictment which contains two counts.   Several exceptions to the indictment were made by the defendant's counsel, which were overruled by the court, and the defendant excepted.   The judgment-entry recites that thereon "both parties announced themselves ready for trial; and the indictment in this cause containing two separate counts, the State now elected to try the defendant on the count of forgery."

The count in the indictment upon which the State elected to try and on which the trial was had charges "that D. H. Francis, in the county of Robertson, in the State of Texas, on the 20th day of April, in the year of our Lord eighteen hundred and seventy-seven, wilfully, feloniously, without lawful authority, and with the intent to defraud, did make and forge a certain false and forged instrument in writing, purporting to be the act of another person, to wit, the act of one William Smith, and which false and forged instrument in writing did then and there relate to and affect an interest in land in the State of Texas, and which said false and forged instrument in writing was by the said Francis then and there falsely made in such manner that said false and forged instrument in writing would, if the same were true and genuine, have affected and transferred certain property, to wit, a certain valid land-certificate or warrant numbered 55, issued to John Todd by Clement R. Johns, comptroller of public accounts of the State of Texas, for six hundred and forty acres of land in the State of Texas, and which false and forged instrument in writing

purports to be a conveyance and transfer of the land-cer-
tificate or warrant aforesaid·from the said William Smith to
one R. W. Bell, and purports to bear date on the 20th day·
of April, A. D. 1877, and is in the words and figures follow-
ing, to wit: ": — and here follows the instrument on which
the forgery is assigned. This count has the proper com-
mencement and conclusion.

Of the several exceptions taken to the indictment, and
which were overruled, the first three take the position,
virtually, that the grand jury of Travis County had no
lawful authority to indict the defendant, because the indict-
ment shows on its face that the offence charged was com-
mitted in Robertson County and that the defendant was a
citizen of that county at the time he is charged with com-
mitting the offence. The fourth ground of exception is
that the petit jury of Travis County and the District Court
of that county have no authority to try the case, even if
the grand jury may indict. The fifth exception is as fol-
lows: " Because the statute under which this indictment is
found, and particularly sect. 5 thereof, is unconditional
and void." There is one other exception, which refers to
the second count in the indictment; but as this count was
abandoned by the prosecution, this exception need not be
further noticed.

Besides these preliminary exceptions, two others were set
out in a motion in arrest of judgment, the first of which
asserts the proposition that sect. 5 of the act under which
the prosecution was had is unconstitutional and void for the
following reasons: 1. Because said section is not embraced
in nor indicated by the *title* of the act; 2. Said sect. 5 is
a special law; 3. Because it is contrary to the provisions
of art. 1, sect. 19, of the Bill of Rights, and to sect. 10 of
the· same article. The second is: Because the testimony
discloses that the defendant forged the instrument described
in the indictment, if at all, in Waller County, and not
in Robertson as charged in the indictment. The record

does not disclose that the motion in arrest of judgment was ever acted on by the court. It is noticeable, however, that all the grounds of exception to the indictment, as well as those set out in the motion in arrest of judgment, are substantially set out in the defendant's motion for a new trial, except perhaps such as question the constitutionality of the act under which the defendant was prosecuted.

It is hardly necessary or requisite now that we should enter into an elaborate investigation into the question as to the constitutionality of the act of July 28, 1876, as this particular subject was before this court and necessary to a decision in the case of *Ham* v. *The State*, 4 Texas Ct. App. 645, when on full argument and mature consideration it was held that the law in question was constitutional, and that sect. 5 of the act is germane to the title of the act, and is not a special or local law. In the opinion in *Ham's Case* it was said by the present presiding judge of this court that "so outrageous had become the wrongs inflicted upon our citizens by means of forged land-titles, that the framers of our last Constitution incorporated into that instrument the sixth section of art. 13, which provides that 'the Legislature shall pass stringent laws for the detection and conviction of all forgers of land-titles, and make such appropriations of money for that purpose as may be necessary.' In obedience to this requirement the Fifteenth Legislature, the first which assembled under the new Constitution, on July 28, 1876, passed an act entitled 'An act to provide for the detection and conviction of all forgers of land-titles.' " Gen. Laws 1875, p. 59.

Sect. 5 of the act in question, to which we understand the objection in the present case applies, is in this language: "Persons out of the State may commit, and be liable to indictment and conviction for committing, any of the offences hereinafter enumerated which do not in their commission necessarily require a personal presence in this State, the object of this act being to reach and punish all

persons offending against its provisions whether within or without the State ; and indictments under this act may be presented by the grand jury of Travis County in this State, or in the county where the offence was committed, or in the county where the land lies about which the offences in this act were committed.'' It is to the latter portion of this section, which provides that '' indictments under this act may be presented by the grand jury of Travis County,'' as we understand, the objections here presented apply ; it being contended on behalf of the appellant that the grand jury of Travis County had no right to indict, nor did the District Court and the petit jury of that county have lawful authority to try the accused on the indictment presented, it appearing on the face of the indictment that the forgery set out was committed in Robertson County.

It is conceded that the questions here raised to the constitutionality of the section of the act under consideration are not precisely identical with those raised in *Ham's Case;* yet, inasmuch as the section has been held germane to the requirements of the Constitution, we must hold the particular portion complained of, which provides that indictments under this act may be presented by the grand jury of Travis County, necessarily carries with it the right of the District Court of Travis County, or of either of the two counties mentioned in the section, to try the person so indicted in that county, without reference to prior legislation on the subject of the venue of criminal trials. The question of variance is, under this act, wholly immaterial where it is averred or proved the offence was committed, if it affected land in Texas.

Counsel for the appellant have prepared the case for appeal with more than ordinary care ; every ruling of the court complained of on the trial below is presented in the record by clear bills of exception, so as to leave no doubt or uncertainty as to the precise matter complained of. In the view we take of the case, it will not be necessary that

the several matters set out in the bills of exception should be separately considered. We notice, as most important, some of the rulings of the court below on the evidence; and, secondly, the charge of the court.

1. The State introduced as a witness one J. Barry Strong, and after he had been sworn the defendant objected to his testimony " because he stands indicted in this court for the forgery of the conveyance from John Todd to William Smith, and because the State proposes to take the testimony of said witness without first dismissing the said indictment against the witness, it being admitted that he was indicted therefor." The objection was overruled, and the defendant excepted.

2. The State's counsel offered in evidence the conveyance to the John Todd certificate, from William Smith to R. W. Bell, which was objected to on several grounds, viz.: because the State had not shown that the defendant wrote or signed the signature "William Smith" to said conveyance; because it does not purport to have been signed by this defendant nor acknowledged by him; because the body of the instrument is in the handwriting of another, and not that of the defendant; because there is an attesting witness to the genuineness of the signature of William Smith, who has not been called by the State to prove that the signature is a forgery; and because the testimony of the defendant as to who made the acknowledgment had not been offered: These objections were overruled, and exceptions reserved; and the transfer was introduced and read to the jury over the objections.

3. The State, by attorney, offered in evidence the certificate of acknowledgment to the transfer from Smith to Bell, which was objected to by the defendant because the certificate of acknowledgment is no part of the instrument alleged to be forged; because the certificate of acknowledgment is collateral and irrelevant to the issue being tried; and because, to prove that the certificate of acknowledg-

ment was a forgery, or that the defendant had personated
another in making the certificate, does not prove that he
forged the instrument to which the certificate is attached.

. In another bill of exceptions it is recited that after J. Barry
Strong had sworn that he and the defendant forged the con-
veyance to the Todd certificate purporting to be a convey-
ance from Todd to Smith, the prosecution offered in evi-
dence the conveyance from John Todd to William Smith of
the Todd certificate ; to the admission of which the defend-
ant objected on several grounds, viz. : because the signature
of Todd is only proved to have been written by the defendant
by Strong, an accomplice; and because the testimony was
irrelevant to the issue ; and because it was not competent
for the State to show another and different forgery than the
one charged in the indictment, for the purpose of showing
*scienter* in this. The objection was overruled, and the
evidence admitted. Other objections of similar character
were taken to testimony introduced by the State.

It is true that the production of evidence is in general
governed by certain fixed rules : *first*, that the evidence must
correspond with the allegations, and be confined to the point
in issue ; *second*, the testimony is sufficient if the *substance*
only of the issue be proved, etc. 1 Greenl. on Ev., sect. 50.
But these general rules do not apply in every case ; on the
contrary, the authorities are abundant to the effect that
there are many qualifications and exceptions to these gen-
eral rules which are of as binding authority and which are
based on as sound reason as the general rules themselves.
One of these exceptions is that testimony is admissible if it
*tends* to prove the issue ; or constitutes a link in the chain
of proof, although alone it might not justify a verdict in
accordance with it. Nor is it necessary that its relevancy
should appear at the time when it is offered ; it being the
usual course to receive, at any proper and convenient stage
of the trial, in the discretion of the judge, any evidence
which counsel shows will be rendered material by other

evidence which he undertakes to produce. If it is not sub-
sequently thus connected with the issue, it is to be laid out
of the case. 1 Greenl. on Ev., sect. 51*a.*

Evidence going to show knowledge and intent of the
party against whom it is offered, though apparently col-
lateral and foreign to the main subject, may have a direct
bearing, and thus become admissible. So, in an indictment
for knowingly uttering a forged document or a counterfeit
bank-note, proof of the possession or of the prior or
subsequent utterance of other false documents or notes,
though of a different description, is admitted as material to
the question of guilty knowledge or intent. Cases of this
sort, therefore (says Mr. Greenleaf), instead of being ex-
ceptions to the rule, fall strictly within it. 1 Greenl. on
Ev., sect. 53 and notes.

Mr. Wharton (1 Whart. Cr. Law, sect. 649), on the
authority of quite a number of cases, lays down the follow-
ing rule: "When the *scienter* or *quo animo* is requisite to
and constitutes a necessary and essential part of the crime
with which the person is charged, and proof of such guilty
knowledge or malicious intention is indispensable to estab-
lish his guilt in regard to the transaction in question, testi-
mony of such acts, conduct, or declarations of the accused
as tend to establish such knowledge or intent is competent,
notwithstanding they may constitute in law a distinct crime."
We are of opinion that under a proper application of these
authorities (and they are not alone) the court did not err
in any of its rulings in admitting the testimony set out in
the record against the defendant. The testimony was, we
are of opinion, properly admitted.

With reference to the charge of the court, the judge in-
structed the jury, among other things, as follows: "Our
statute further provides that in case of forgery affecting
the titles to lands in Texas, upon indictments in such
cases it shall only be necessary to prove that the person
charged took any one step or did any one act or thing in

the commission of the offence, if from such step, act, or thing any intention to defraud may be reasonably inferred.'' This charge was excepted to at the time of the trial, as shown by a bill of exceptions embodied in the transcript. We are of opinion that this charge of the court as set out above, whilst it is in the language of the statute, or nearly so, was defective in that it did not make any application of the law to the facts in evidence, or give to the jury any such direction as to enable them to determine what fact, or act, or step, or thing would be such as that the jury might reasonably infer the existence of an intention to defraud, or that they might not reasonably infer such intention to defraud from the proof of the defendant's having taken any one step or done any one act or thing which had been admitted to prove *scienter*, without any direct reference to whether the testimony introduced was sufficient to establish the fact that such step, act, or thing related directly to the forgery for which the defendant was being tried. The particular charge which is copied above, as well as the charge taken as a whole, was defective and insufficient in not making an application of the law to the issue being tried, nor giving to the jury such instructions as would enable them to apply the facts to the law, with reference to the issue of guilty or not guilty of the offence charged in the first count in the indictment, to wit, the forgery of the transfer from Smith to Bell of the land-certificate described therein.

To our minds, the remarks of the chief justice of the Supreme Court in *Marshall* v. *The State*, 40 Texas, 200, which follow, are as applicable to the present case as they were to the one then under consideration, changing only the character of the offence: " The charge of the court excepted to is composed of definitions of murder, assaults with intent to murder, an aggravated assault, and a common assault, together with explanatory provisions relating thereto, extracted from the Penal Code. There is no effort, in giving the charge to the jury, to ' distinctly set forth the

law applicable to the case' as developed by the facts proven on the trial, which is required in every case of felony whether asked or not. [Citing the article.]   When there is a failure to perform this duty, and an exception thereto is made at the time of the trial, and the exception is made to appear by a bill of exceptions, it is expressly made good cause for the reversal of the judgment of conviction." Citing Pasc. Dig., art. 3067.

We are of opinion that the charge of the court in the present case comes clearly within the rule in *Marshall's Case* as quoted above. With the exceptions that the charge instructs the jury as to the presumption of innocence and the reasonable doubt, and that the jury are the exclusive judges of the weight of the evidence and the credibility of the witnesses, and directs them to apply the law as found in the charge to the evidence before them, the whole charge is made up of extracts from the statute under which the defendant was being prosecuted.

Because of error in the charge of the court, the judgment will be reversed and the case remanded for a new trial.

*Reversed and remanded.*